**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-23-026-JFH |
| ) | |
| DANNY GENE KIRBY, ) | |
| ) | |
| Defendant. ) | |

## FINDINGS AND RECOMMENDATION

Before the court is Defendant's First Motion to Dismiss Indictment (Docket Entry #30) and Second Motion to Dismiss Indictment (Docket Entry #31). The Grand Jury sitting in this District indicted Defendant on a single count of Involuntary Manslaughter in Indian Country in violation of 18 U.S.C. §§ 1112, 1151, and 1153. Specifically, the Indictment alleges that Defendant

> did unlawfully kill S.B., in the commission of an unlawful act not amounting to a felony, that is operating a motor vehicle under the combined influence of alcohol and any other intoxicating substance which may render such person incapable of safely driving or operating a motor vehicle, contrary to Title 47, Oklahoma Statutes, Section 11-902, and in the commission in an unlawful manner and without due caution and circumspection of a lawful act which might produce death, in violation of Title 18, United States Code Sections 1112, 1151, and 1153.
>
> See, Indictment filed February 15, 2023 (Docket Entry #3).

On July 23, 2033, Defendant, an Indian, was driving a motorcycle on which S.B., also an Indian, was a passenger while leaving Fountainhead Marina bar in McIntosh County, Oklahoma. While attempting to make a turn, Defendant drove off of the roadway. He attempted to re-enter the

roadway, lost control of the motorcycle, and caused S.B. to be thrown from the motorcycle where she impacted with the pavement. S.B. died from her injuries.

When Oklahoma Highway Patrol Trooper Charles Epley arrived at the scene, he observed Defendant walking around, anxious, and with the odor of alcohol. Defendant reported he had been drinking and when Trooper Epley inquired what had happened, Defendant stated he "had an accident." Trooper Epley noted Defendant's eyes were bloodshot and again noted he smelled of alcohol.

Trooper Epley attempted to administer field sobriety tests, including a portable breath test which indicated a blood alcohol level of 0.04%. Trooper Epley then obtained Defendant's consent to obtain a blood draw. Defendant was transported to the hospital where the blood draw occurred. The blood draw indicated the presence of ethyl alcohol, Hydroxy-THC, THCA, THC, Amphetamine, Tramadol, Citalopram, Trazodone, and Oxycodone. Defendant was charged thereafter.

## First Motion to Dismiss Indictment

In the suppression motion, Defendant contends first contends that the underlying "unlawful act not amounting to a felony" should not have been based upon an Oklahoma statute but rather should have referenced the Muscogee (Creek) Nation Code because Defendant and the victim were Indians and the conduct being prosecuted occurred in Indian Country. Defendant is charged under 18 U.S.C. § 1112 with Involuntary Manslaughter. By its statutory terms, "manslaughter" is defined as "the unlawful killing of a human being without malice." "Involuntary

2

manslaughter" requires "[i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112(a). The Indian Major Crimes Act incorporates the offenses of the Major Crimes Act into Indian Country in providing

> (a) Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely . . . manslaughter . . . within Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.
>
> (b) Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.
>
> 18 U.S.C. § 1153.

The Assimilative Crimes Act ("ACA") provides, in pertinent part, that

> [w]hoever . . . is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted in the jurisdiction of the State, Territory, or District in which such place is situated, by the laws therein in force at the time of such act or omission, shall be guilty of a like offense and subject to like punishment.
>
> 18 U.S.C. § 13.

Generally, the ACA "applies to crimes on Indian reservations by way of 18 U.S.C. § 1152, which extends federal-enclave law to Indian

country." United States v. Polk, 61 F.4th 1277, 1279 (10th Cir. 2023) citing United States v. Langford, 641 F.3d 1195, 1197 (10th Cir. 2011) (explaining that "in conjunction," ACA and § 1152 "(1) assimilate state criminal law into federal law" for acts committed on federal enclaves and "(2) apply these assimilated state crimes to acts committed in Indian country").

Defendant first challenges the Indictment by contending that the Government should have cited to a crime set out in the Muscogee (Creek) Nation Code in establishing the "unlawful act not amounting to a felony" within the charged Involuntary Manslaughter count. Defendant reasons that since he is an Indian and S.B., the alleged victim, is also an Indian, and the incident occurred on an Indian reservation, Defendant cannot be prosecuted under Oklahoma law for the underlying offense of driving under the influence.1

---

1 The "unlawful act not amounting to a felony" which Defendant is alleged to have committed within the Involuntary Manslaughter charge is a violation of Okla. Stat. tit. 47 § 11-902 which provides, in pertinent part:

> A. It is unlawful and punishable as provided in this section for any person to drive, operate, or be in actual physical control of a motor vehicle within this state, whether upon public roads, highways, streets, turnpikes, other public places or upon any private road, street, alley or lane which provides access to one or more single or multi-family dwellings, who:
>
> 1. Has a blood or breath alcohol concentration, as defined in Section 756 of this title, of eight-hundredths (0.08) or more at the time of a test of such person's blood or breath administered within two (2) hours after the arrest of such person;
>
> 2. Is under the influence of alcohol;
>
> 3. Has any amount of a Schedule I chemical or controlled

Defendant justifies this contention by citing to the limitation found in 18 U.S.C. § 1152 that the ACA

> shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.
>
> 18 U.S.C.A. § 1152.

The underlying "unlawful act", however, does not involve an offense committed by one Indian against another but rather constitutes a traffic violation, which are often described as "victimless crimes" or "crimes against the public at large". *See* United States v. Thunder Hawk, 127 F.3d 705, 709 (8th Cir. 1997)("the offense of driving under the influence is more akin to an offense against the public at large, both Indian and non-Indian, rather than a true 'victimless' crime."). Such violations

---

> substance, as defined in Section 2-204 of Title 63 of the Oklahoma Statutes, or one of its metabolites or analogs in the person's blood, saliva, urine or any other bodily fluid at the time of a test of such person's blood, saliva, urine or any other bodily fluid administered within two (2) hours after the arrest of such person;
>
> 4. Is under the influence of any intoxicating substance other than alcohol which may render such person incapable of safely driving or operating a motor vehicle; or
>
> 5. Is under the combined influence of alcohol and any other intoxicating substance which may render such person incapable of safely driving or operating a motor vehicle.
>
> Okla. Stat. Ann. tit. 47, § 11-902.

5

are undoubtedly prosecutable by Federal authorities. Ross v. Neff, 905 F.2d 1349, 1353 (10th Cir. 1990) ("There is no question but that 18 U.S.C. § 13 would allow *federal* enforcement of the local ordinance against public intoxication involved in this case.")(emphasis in original). This is sufficient to satisfy the requirements under the Involuntary Manslaughter statute. Nothing in that provision requires that the "unlawful act" be subject to prosecution by the State in which it occurred. 18 U.S.C. § 1112.[2] As a result, this Court concludes that the Government is not required to amend the Indictment to include a violation of the Muscogee (Creek) Nation Code.

Defendant also asserts that the ACA should not be utilized to charge him with the assimilative act of driving under the influence because "the application of the Oklahoma statute concerning driving while under the influence of alcohol or other intoxicating substances . . . is at odds with the requirement under federal law that the government establish that a party acted with gross negligence before they can be found guilty of involuntary manslaughter." Defendant cites to the case of United States v. Benally, 756 F.2d 773 (10th Cir. 1985) to support this proposition. The problem identified by the Tenth Circuit in Benally, however, entailed the jury instruction based in state law for intoxication which the Court found to be in conflict with the requirement of federal law for gross negligence in considering the charge of

---

2 By so stating, this Court does not rule as a matter of law that only the federal government may prosecute traffic violations committed by Indians on an Indian reservation.

Involuntary Manslaughter.  It does not stand for the proposition that an unlawful act no state statute against driving while under the influence can be used as an "unlawful act not amounting to a felony." The requirement under 18 U.S.C. § 1112(a) is that the killing of a human being occurred during the commission of an unlawful act not amounting to a felony.  The employment of the state statute does not remove the requirement to show gross negligence.  In the end, this is certainly a matter that can be solved with well-crafted jury instructions without amendment or dismissal of the Indictment.  This Court is confident that the presiding trial judge is well-equipped to accomplish this task. Defendant's contention that the ACA cannot be used in this fashion is rejected.

## Second Motion to Dismiss Indictment

In his second request to dismiss the Indictment against him, Defendant contends that the application of Okla. Stat. tit. 47 § 11-902(A)(3) violates his constitutional rights under the Fifth and Fourteenth Amendments.  Specifically, this subsection provides that it is unlawful to operate a vehicle on the public roadways if a person

> 3. Has any amount of a Schedule I chemical or controlled substance, as defined in Section 2-204 of Title 63 of the Oklahoma Statutes, or one of its metabolites or analogs in the person's blood, saliva, urine or any other bodily fluid at the time of such person's blood, saliva, urine or other bodily fluid administered within two (2) hours after the arrest of such person

Okla. Ann. Stat. tit. 47 § 902(A)(3).

Defendant asserts that "there is no rational basis for the Oklahoma

7

legislature's classification of marijuana as a Schedule I drug." Defendant states that he has been issued a medical marijuana card under Oklahoma law and has complied with the Oklahoma Medical Marijuana and Patient Protection Act ("OMMPPA").3

As the Government appropriately notes, marijuana is considered a Schedule I controlled substance under both Federal and Oklahoma state law. 21 U.S.C. § 812; Okla. Stat. tit. 63 § 2-204. On the federal level, the United States Supreme Court has recognized that Congress has the authority to classify marijuana as a Schedule I substance and to delegate authority to the Attorney General to reclassify it as a lesser-schedule drug in the future. Gonzales v. Raich, 545 U.S. 1, 9, 27–28 & n.37 (2005)("the [Controlled Substances Act ("CSA")] is a valid exercise of federal power" and that the application of CSA provisions criminalizing manufacture, distribution, or possession of marijuana to intrastate growers and users of marijuana for medical purposes did not violate the commerce clause). Moreover, any challenge to the classification of marijuana as a Schedule I controlled substance must overcome the rational basis test. Under the rational basis test, "a classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Heller v. Doe, 509 U.S. 312, 320 (1993) (quoting FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993)). The judiciary does not sit as a "superlegislature," and the

---

3 Okla. Stat. tit. 63 § 427.1 *et seq*.

statute is "accorded a strong presumption of validity." Id. While these citations refer to the federal statute, the same rationale can be applied to the Oklahoma controlled substances classification statute. Just as it is not inconsistent for opioids and other controlled substances to be both medically beneficial but legislatively regulated, marijuana may occupy that same status. Defendant argues that his due process rights are violated when the Oklahoma statute provides that any level of THC in his blood renders him criminally liable for driving under the influence. Defendant essentially seeks for this Court to establish Oklahoma public policy - an avenue onto which this Court will not venture. This is a legislative matter and not a constitutional one. The judicial record is replete with courts which have upheld this classification of marijuana on the federal level. This Court finds the reasons stated by these courts provides a rational basis for the classification both on the federal and state level with no justification to disturb these legislative pronouncements.[4]

---

[4] Sacramento Nonprofit Collective v. Holder, 2014 WL 128998, at *1 (9th Cir. Jan. 15, 2014) (rejecting argument that the federal ban on marijuana, while permitting prescription drugs, has no rational basis); United States v. Fogarty, 692 F.2d 542, 548 (8th Cir. 1982) ("Thus, even assuming, arguendo, that marijuana has some currently accepted medical uses, the Schedule I classification may nevertheless be rational in view of countervailing factors such as the current pattern, scope, and significance of marijuana abuse and the risk it poses to public health."); United States v. White Plume, 447 F.3d 1067, 1075-76 (8th Cir. 2006) (affirming the rationale of Fogarty); United States v. Kiffer, 477 F.2d 349, 355 (2d Cir. 1973) (ruling that even if marijuana is less harmful than tobacco and alcohol, the classification is not unconstitutional because Congress may decide to prohibit some harmful substances but is not constitutionally compelled to prohibit all); United States v. Washington, 887 F. Supp. 2d 1077, 1102-03 (D. Mont. 2012)(ruling that "there remains sufficient debate regarding the public benefits and potential for harmful consequences of marijuana use to find a rational basis to uphold the continued classification of marijuana as a schedule I controlled substance"); United States v. Zhuta,

Defendant also claims the immunity provision of the OMMPPA precludes the use of Okla. Stat. tit. 47 § 11-902(A)(3) as a basis for the "unlawful act" under 18 U.S.C. § 1112(a) for Involuntary Manslaughter. Under the OMMPPA, a medical marijuana card holder "shall not be subject to arrest, prosecution or penalty in any manner . . . for the medical use of marijuana in accordance with this act." Okla. Stat. tit. 63 § 427.8(F). While there is a dearth of case authority interpreting this statute since its relatively recent passage in 2019, the plain language of this provision in conjunction with § 11-902(A)(3) suggests a contrary interpretation to Defendant's urged position. § 427.8(F) precludes legal action "for the medical use of marijuana in accordance with this act." § 11-902(A)(3) does not seek to curtail the medical use of marijuana but rather the driving while using marijuana as an intoxicant.

"If possible, statutes are to be construed so as to render them consistent with one another. . . . Eason Oil Co. v. Corp. Comm'n, 535 P.2d 283, 286 (Okla. 1975). It is the duty of this Court to reconcile the different provisions of statutes, as far as practicable, to make them not only consistent and harmonious, but also to give an intelligent effect to each. Inexco Oil Co. v. Corp. Comm'n, 628 P.2d 362 (Okla.1981); Trapp v. Wells Fargo Express Co., 22 Okla. 377, 97 P. 1003 (1908). If

---

2010 WL 5636212, at *3 (W.D.N.Y. Oct. 29, 2010)("[T]he defendant argues that marijuana does not have a high potential for abuse; that it has been approved for medical uses; that it is dissimilar to more dangerous substances; and that identical conduct relating to alcohol and tobacco is not illegal. . . . These arguments have been repeatedly rejected.").

two constructions are possible, this Court will prefer the one that avoids conflict between the two provisions. Roach v. Atlas Life Ins. Co., 769 P.2d 158 (Okla.1989)." Sharp v. Tulsa Cnty. Election Bd., 890 P.2d 836, 840, *as supplemented on reh'g* (Jan. 31, 1995). Defendant's interpretation would completely nullify the effect of 11-902(A)(3) while this Court's interpretation gives both statute effect. Consequently, Defendant's suggestion of complete immunity for those with medical marijuana licenses is rejected.

As a final argument, Defendant argues that the interplay and inconsistency between § 11-902(A)(3) and § 427.8(F) renders the application of the statutes void for vagueness and in violation of his due process rights. While the Government inexplicably skipped this argument in its briefing, this Court is not persuaded by Defendant's stated position.

"The void-for-vagueness doctrine, . . . , guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes. Papachristou v. Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). And the doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges. See Kolender v. Lawson, 461 U.S. 352, 357–358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)." Sessions v. Dimaya, 138 S. Ct. 1204, 1212 (2018). It is contrary to reason that one who is medicinally taking marijuana would believe that he is free to operate a motorized vehicle on the public roadway with impunity. Again, this interpretation of the statutes is

11

consistent with the use of any other prescribed medication which has intoxicating properties – while it is in the patient's system, he may not operate a vehicle. This interaction between the prohibited conduct set out in § 11-902(A)(3) and the permitted conduct in § 427.8(F) may be consistently read in this manner.

IT IS THE RECOMMENDATION OF THIS COURT that Defendant's First Motion to Dismiss Indictment (Docket Entry #30) and Defendant's Second Motion to Dismiss Indictment (Docket Entry #31) be **DENIED**.

The parties are given fourteen (14) days from the date of the service of these Findings and Recommendation to file any objections with a supporting brief. Failure to object to the Findings and Recommendation within fourteen (14) days will preclude appellate review of the order of the District Court based on such findings.

IT IS SO ORDERED this 19th day of May, 2023.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE